RODNEY LEGGETT (SBN 332119)
rleggett@housingrightscenter.org
ZACHARY FREDERICK (SBN 333738)
zfrederick@housingrightscenter.org
JAVIER BELTRAN (SBN 240416)
jbeltran@housingrightscenter.org
HOUSING RIGHTS CENTER
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA 90010
Tel.:(213) 387-8400 / Fax: (213) 381-8555

Attorneys for Plaintiff
Trajion Traylor

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TRAJION TRAYLOR,<br><br>   Plaintiff,<br><br> v.<br><br>YORAMCO PROPERTIES LTD, a California Limited Partnership; MEDOVOI-OWENSMOUTH LLC, a California Limited Liability Corporation; KAREN ROBERTS, an individual,<br><br>   Defendants. | Case No.:<br><br>COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF; DEMAND FOR JURY TRIAL<br><br>1. **VIOLATION OF FAIR HOUSING ACT**<br><br>2. **VIOLATION OF FAIR EMPLOYMENT AND HOUSING ACT**<br><br>2. **VIOLATION OF THE UNRUH ACT**<br><br>3. **VIOLATION OF THE UNFAIR BUSINESS PRACTICES ACT** |

///

///

///

---

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

1

# I. INTRODUCTION

1. Plaintiff, TRAJION TRAYLOR, brings this action against Defendants, YORAMCO PROPERTIES LTD, MEDOVOI-OWENSMOUTH LLC, and KAREN ROBERTS, for injunctive, declaratory, and monetary relief for discriminating in the rental of housing based on race in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619, the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900-12996, the Unruh Act, Government Code §§ 51-52, and the Unfair Business Practices, California Business and Professions Code § 17200.

2. Mr. Traylor is a current tenant at 7636 Owensmouth Avenue, Unit 7, Canoga Park, California, 91304 where he has lived for approximately 10 years in his studio unit. The apartment complex located at 7636 Owensmouth Avenue was owned and operated by Defendants YORAMCO PROPERTIES, LTD until May 2019, and MEDOVOI-OWENSMOUTH LLC, has owned and operated the property since May 2019. Mr. Traylor is African American.

3. One of the central objectives of the Fair Housing Act and the California Fair Employment and Housing Act is to prohibit race discrimination in the rental of housing. Defendants have violated the Fair Housing Act and California law by harassing and discriminating against Mr. Traylor because he is African American. Since 2012, Defendants have delayed repairs to Mr. Traylor's unit, warned Mr. Traylor that they were "watching him," referred to Mr. Traylor using racially-charged language while refusing to help Mr. Traylor access his apartment when he was locked out, denied Mr. Traylor access to the building's parking garage, demanded that Mr. Traylor stop letting people of his "kind" visit his apartment, installed a metal bar to physically block Mr. Traylor from parking in his assigned parking spot, arranged for Mr. Traylor's car to be towed in the middle of the night, and repeatedly told Mr. Traylor that he needed to "move his Black ass."

# II. JURISDICTION AND VENUE

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because the claims alleged herein constitute discriminatory practices under the Fair Housing Act, 42 U.S.C. § 3601 et seq. The Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because Plaintiff's federal and state law claims are related, arise out of a common nucleus of related facts, and form the same case and controversy as the federal law claims.

5. This Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Fair Housing Act, 42 U.S.C. § 3613(c).

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) & (2) because Defendants reside in this district and all events giving rise to this complaint occurred in this district.

### III. PARTIES

7. Plaintiff, TRAJION TRAYLOR, is a tenant at 7636 Owensmouth Avenue, Unit 7, Canoga Park, California 91304 ("7636 Owensmouth Avenue"), an apartment complex owned and operated by Defendants. Mr. Traylor has lived in his Unit 7 apartment since 2012. Mr. Traylor is a "person" within the meaning of Government Code § 12927(f) and Civil Code § 1761(c) and an "aggrieved person" under Government Code § 12927 (g).

8. Defendant, YORAMCO PROPERTIES, LTD, is a California Limited Partnership that owned and operated 7636 Owensmouth Avenue until May 2019. 7636 Owensmouth Avenue is a multifamily residential property containing 39 apartments. The individual apartments at 7636 Owensmouth Avenue and associated public and common areas are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b). The individual apartments at 7636 Owensmouth Avenue and associated public and common areas are "are "housing accommodations" within the meaning of the FEHA, Cal. Gov't Code § 12927(d). Until May 2019, YORAMCO PROPERTIES, LTD

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

was responsible for the overall management and operation of 7636 Owensmouth Avenue.

9.   Defendant, MEDOVOI-OWENSMOUTH LLC, is a California Limited Liability Corporation that has owned and operated 7636 Owensmouth Avenue since May 2019. Since May 2019, MEDOVOI-OWENSMOUTH LLC has been responsible for the overall management and operation of 7636 Owensmouth Avenue.

10.  Defendant KAREN ROBERTS acted as the manager of 7636 Owensmouth Avenue until February 2021 and was responsible for its day-to-day management, including arranging repairs, dealing with tenant complaints, and overseeing tenant parking. Ms. Roberts lived onsite at 7636 Owensmouth Avenue in Unit 40 while she managed the building. Ms. Roberts was an agent of Defendants, YORAMCO PROPERTIES, LTD and MEDOVOI-OWENSMOUTH LLC, thereby having control of, and decision-making authority with respect to the 7636 Owensmouth Avenue Property; Ms. Roberts has also exercised real or apparent authority regarding the 7636 Owensmouth Avenue property; and was responsible for complying with all relevant laws but failed to do so. Mr. Traylor brings this case against Ms. Roberts in her individual capacity and as the former manager of the 7636 Owensmouth Avenue Property.

11.  Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, each and every defendant was the agent, servant, employee, co-conspirator, and/or representative of each and every other defendant and was, in doing the things complained of herein, acting within the scope of said agency, service, employment, conspiracy, and/or representation, and that each and every defendant was acting within his/her actual or apparent authority with the full knowledge and consent of each other defendant.

### IV. FACTUAL ALLEGATIONS

12.  Plaintiff, Trajion Traylor, is a tenant at 7636 Owensmouth Avenue, Unit 7, Canoga Park, California 91304 ("7636 Owensmouth Avenue"), an apartment complex

owned and operated by Defendants. Mr. Traylor has lived in his Unit 7 apartment since January 6, 2012. Mr. Traylor is African American and experienced a years-long campaign of harassment, discrimination, and humiliation from Defendants because of his race.

13. On January 6, 2012, Mr. Traylor moved into Unit 7 at 7636 Owensmouth Avenue and was assigned parking space #34 in the property's parking lot. At that time, Defendant Karen Roberts was the property manager at 7636 Owensmouth Avenue. Ms. Roberts lived onsite at 7636 Owensmouth Avenue in Unit 40 while she managed the building. As manager, Ms. Roberts was responsible for day-to-day management of the apartment complex, including collecting rent, arranging repairs, dealing with complaints and service requests, and overseeing the parking lot. Ms. Roberts is white and subjected Mr. Traylor to years of harassment, discrimination, and humiliation based on his race.

14. Soon after Mr. Traylor moved into the apartment complex, Ms. Roberts began to treat Mr. Traylor differently than the building's other tenants. In one situation on the morning of February 5, 2012—less than a month after he first moved in—Ms. Roberts came to Mr. Traylor's apartment and banged on his door while yelling that he needed to pay rent. Ms. Roberts did not bang on any other tenant's doors to demand rent.

15. On May 7, 2012, Ms. Roberts confronted Mr. Traylor about when he would pay his rent by yelling at him from her apartment balcony. Mr. Traylor felt intentionally singled out and humiliated, demeaned, and embarrassed by Ms. Roberts' actions because other tenants were outside BBQing and could hear Ms. Roberts yelling at him about the rent payment.

16. On October 4, 2012, Ms. Roberts knocked on Mr. Traylor's door and confronted him about a letter he wrote to Ms. Roberts. The letter objected to his upstairs neighbors in Unit #23 sweeping trash and water into the front of Mr. Traylor's Unit #7. Instead of acknowledging the problem, Ms. Roberts dismissed Mr. Traylor's concerns and told Mr. Traylor that the sweeping of trash and water into the front of his unit was not a real issue and that he had no right to complain.

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

17. On October 12, 2012, Mr. Traylor submitted a letter to Ms. Roberts and also verbally asked Ms. Roberts to fix the rusted piping, bathtub mold, and infestation of roaches in his unit. The letter requested that building management deal with the issues in a timely manner. Instead, Defendants did not send an exterminator to treat his apartment for pests until March 11, 2013, a five-month delay after his initial complaint in October 2012.

18. On April 2, 2015, Mr. Traylor submitted a letter to Ms. Roberts in which he inquired about obtaining a second parking space to make it easier for his father—a person with a disability who uses a wheelchair—to visit. Ms. Roberts never responded to or acknowledged Mr. Traylor's request for a second parking space.

19. On May 20, 2015, Yoramco Properties notified all tenants of 7636 Owensmouth Avenue that new storage units were being added to the building's parking lot and wrote in the notice that "ALL tenants will have one storage per each apartment unit." Once installed, other apartment units received one storage unit as promised. When he noticed the storage units being used by other tenants, Mr. Traylor submitted a formal request to management to be assigned his own unit. Ms. Roberts ignored the request, did not provided Mr. Traylor with a storage unit, nor offer an explanation as to why he did not receive a storage unit.

20. On September 15, 2015, Ms. Roberts's harassing behavior escalated when she aggressively confronted Mr. Traylor in front of his apartment unit. Due to Ms. Roberts' hostile behavior, Mr. Traylor felt unsafe. To protect himself from harm, Mr. Traylor began recording this incident with Ms. Roberts on his cell phone. In response, Ms. Roberts smacked Mr. Traylor's phone out of his hands and the phone broke when it hit the ground. Ms. Roberts returned to her apartment. Mr. Traylor felt paralyzed with shock by Ms. Roberts inappropriate behavior.

21. On August 5, 2016, Mr. Traylor submitted a letter to Ms. Roberts requesting that Defendants repair his unit's wall heater and eliminate an ongoing

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

cockroach issue. Continuing their discriminatory treatment, Defendants ignored Mr. Traylor's request.

22. On January 17, 2017, Ms. Roberts' discriminatory conduct again escalated when she used racially discriminatory language against Mr. Traylor while refusing to help him unlock his apartment. When Mr. Traylor returned home that day, he realized that he was locked out of his apartment because he forgot his keys. When he asked Ms. Roberts to unlock his apartment, Ms. Roberts refused. Instead, she told Mr. Traylor to "take your black ass and figure it out." With no legitimate way to unlock his apartment, Mr. Traylor was forced to gained access by climbing through a window.

23. Less than two weeks later on January 30, 2017, Ms. Roberts again made racially discriminatory statements to Mr. Traylor by stating that Mr. Traylor was not allowed to have African American guests; after Ms. Roberts witnessed Mr. Traylor's uncle leave his apartment, she told Mr. Traylor that he could not bring people of his "kind" to his apartment. Mr. Traylor's uncle is also African American.

24. Two days later, on February 1, 2017, Ms. Roberts again singled out Mr. Traylor for discriminatory treatment by providing other residents with new mailbox keys but refusing to provide Mr. Traylor with a new mailbox key after he asked her for a new key on multiple occasions.

25. In March 2017, 7636 Owensmouth Avenue was inspected by the City of Los Angeles' Housing and Community Investment Department ("HCIDLA"). The HCIDLA inspectors found numerous problems inside Mr. Traylor's apartment that required repairs by Defendants. On March 25, 2017, Ms. Roberts filled out a 24-Hour Notice of Intent to Enter Premises to make the required repairs and gave it to Mr. Traylor. In the notice, Ms. Roberts included a baseless accusation—rooted in racially discriminatory negative stereotypes about African Americans—that the "black soot" in Mr. Traylor's unit is "damage[] caused by [Mr. Traylor's] drug use."

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

26. Two days later on March 27, 2017, Ms. Roberts again singled out Mr. Traylor for discriminatory treatment by re-assigning his parking spot, without his consent, to a less-desirable spot next to the building's trash containers.

27. Five days later on April 1, 2017, Ms. Roberts served Mr. Traylor with a retaliatory Three-Day Notice to Quit. On the notice, Ms. Roberts wrote that one of the reasons for the notice was that Mr. Traylor "called the housing authorities to state defective problems with his apt."

28. On April 12, 2017, Mr. Traylor filed a complaint with the California Department of Fair Employment & Housing for housing discrimination.

29. On May 7, 2017, Ms. Roberts left a false Three-Day Notice to Pay Late Fee on Mr. Traylor's door even though Mr. Traylor had paid his rent on time. Unlike her normal practice of leaving notices folded and out-of-sight, Ms. Roberts purposely placed the notice so that other tenants could see it by taping it face-out on his door.

30. On June 10, 2017, Ms. Roberts knocked loudly on Mr. Traylor's apartment door in the middle of the night to tell him that she would not accept the rent because it was the wrong amount.

31. Five days later on June 15, 2017, Ms. Roberts again singled out Mr. Traylor for discriminatory treatment by refusing to provide Mr. Traylor with a new parking lot garage opener after he requested one several times even though Ms. Roberts provided openers to all other tenants with garage spots. During the same conversation, Ms. Roberts told Mr. Traylor that she will not allow him to have a parking space because he is renting a car. Mr. Traylor showed Ms. Roberts valid receipts that the car is in his name, that he is the primary driver, that Mr. Traylor paid for the car, and that the car is registered and covered by insurance. Moreover, Mr. Traylor's lease states that his unit comes with a parking space. Despite all of this, Ms. Roberts still refused to provide Mr. Traylor with the garage opener. Without any means to open the building's parking lot garage door, Mr. Traylor was forced to park in the street and move his car early in the morning multiple times per week due to parking restrictions.

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

32. Sometime in June 2017, Ms. Roberts confronted Mr. Traylor at the apartment building and again used racially discriminatory language against him. Mr. Traylor's cousin recorded the incident on his cellphone in order to capture how Ms. Roberts treated Mr. Traylor differently due to his race. In the video, Ms. Roberts states that she has been watching Mr. Traylor and that she "needs to watch Mr. Traylor." Ms. Roberts then tells Mr. Traylor to "move on your little Black ass." Ms. Roberts repeats, "I said move your Black ass." When Mr. Traylor asks her to say it again, Ms. Roberts repeats again, "I said move your Black ass."

33. Mr. Traylor felt humiliated and upset by Ms. Roberts' racist statements.

34. In June 2018, after the city of Los Angeles issued a notice that the conditions of a broken heating unit were unacceptable, Ms. Roberts ignored Mr. Traylor's requests to repair these conditions.

35. In May 2019, ownership of 7636 Owensmouth Avenue was transferred from Yoramco Properties LTD to Medovoi-Owensmouth LLC.

36. In June 2020, despite having a normal practice of leaving the laundry room unlocked at night, after Ms. Roberts witnessed Mr. Traylor putting clothes in the washing machine in the building's laundry room, she intentionally locked the door after he left, causing his clothes to remain wet until she opened the laundry room the next day.

37. Beginning in September 2020, Ms. Roberts against singled out Mr. Traylor for discriminatory treatment by engaging in a months-long effort to keep Mr. Traylor from accessing his assigned parking space. First, Ms. Roberts changed the code to the parking lot gate and provided the new code to all residents except Mr. Traylor—this made it impossible for Mr. Traylor to enter the parking lot or to use his assigned parking space. Mr. Traylor was forced to receive assistance from a neighbor who would come out of his apartment and allow Mr. Traylor entry into the parking area. However, when this neighbor was not available Mr. Traylor was forced to park in the street and move his car early in the morning multiple times per week due to parking restrictions.

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

38. At Mr. Traylor's request, the neighbor provided Mr. Traylor with the numerical code for the gate. In December 2020, Ms. Roberts observed Mr. Traylor accessing his assigned parking spot. In response, she changed the gate code a second time and again provided the new code to all residents except for Mr. Traylor. Because he was again unable to access the parking lot, Mr. Traylor was again forced to park in the street. Again, a neighbor gave Mr. Traylor the numerical code so that he could continue utilizing his assigned parking space.

39. Frustrated that her efforts to prevent Mr. Traylor from accessing his parking space were unsuccessful, on January 6, 2021, Ms. Roberts installed a large, upside down U-shaped metal bar in Mr. Traylor's assigned parking space. The metal bar completely blocked his ability to use his assigned parking space. Only Mr. Traylor's parking space was blocked; no other parking space assigned to any other tenant was obstructed by any kind of metal bar. Once again, Mr. Traylor was forced to park his car on the street.

40. In February 2021, Ms. Roberts stopped managing the building and moved out of her onsite apartment.

41. Around this same time, the metal bar was removed from Mr. Traylor's assigned parking space. Mr. Traylor never received any explanation or compensation from Defendants for the loss of his parking spot.

42. As a result of Defendants' unlawful conduct, Mr. Traylor suffered injury. Mr. Traylor suffered emotional distress, including sleeplessness, loss of appetite, stress, anxiety, humiliation, frustration and insult, out-of-pocket losses, and violations of his civil rights.

43. There now exists an actual controversy between the parties regarding Defendants' duties under state and local fair housing laws. Accordingly, Plaintiff is entitled to declaratory relief.

44. Unless enjoined, Defendants will continue to engage in the unlawful acts and the discrimination described above. Plaintiff has no adequate remedy at law. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants'

acts and their discrimination against Plaintiff on the basis of race unless this court provides relief. Accordingly, Plaintiff is entitled to injunctive relief.

## V. CLAIMS FOR RELIEF

### A. FIRST CLAIM FOR RELIEF

[Fair Housing Act]

*42 U.S.C. §§ 3601-3619*

45. Plaintiff herein realleges and incorporates by reference all the preceding paragraphs of this Complaint.

46. Defendants injured Plaintiff in violation of the Fair Housing Act by committing the following discriminatory housing practices:

    a. Discriminating in the terms, conditions, or privileges of sale or rental of a dwelling on the basis of race in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.65(a).

    b. Limiting the use of privileges, services or facilities associated with a dwelling because of race of a tenant or a person associated with him or her in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.65(b)(4).

    c. Subjecting a person to harassment because of race and color that has the effect of imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting services or facilities in connection with the rental of a dwelling in violation of 42 U.S.C. § 3604(b), 24 CFR § 100.65(b)(7), and 24 CFR 100.600(a)(2).

47. Defendants' intentional discrimination against Plaintiffs constitutes disparate treatment under the FHA.

48. Defendants' discriminatory conduct has caused Plaintiff to suffer special and general damages according to proof.

49. Defendants' conduct has been intentional and malicious, thereby entitling Mr. Traylor to punitive damages in an amount to be determined at trial, but which amount is within the jurisdictional requirements of this Court.

50. Plaintiff is also entitled to an order enjoining Defendants from further discrimination on the basis of race.

## B. SECOND CLAIM FOR RELIEF

[California Fair Employment and Housing Act]

*Cal Gov't Code §§ 12955(a), (d), and (f) and § 12955.7*

51. Plaintiff herein realleges and incorporates by reference all the preceding paragraphs of this Complaint.

52. Defendants injured Plaintiff in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

    a. Discriminating against Mr. Traylor because of his race or color in violation of Cal Gov't Code § 12955(a).

    b. Discriminating against Mr. Traylor on the basis of race or color while being subject to the provisions of Section 51 of the Civil Code, as that section applies to housing accommodations, in violation of Cal Gov't Code § 12955(d).

    c. Harassing or otherwise discriminating against Mr. Traylor in the rental of housing accommodations when the owner's dominant purpose is retaliation against a person who has opposed practices unlawful under this section, informed law enforcement agencies of practices believed unlawful under this section, has testified or assisted in any proceeding under this part, or has aided or encouraged a person to exercise or enjoy the rights secured by this part in violation of Cal Gov't Code § 12955(f).

53. Defendants' discriminatory conduct has caused Plaintiff to suffer special and general damages according to proof.

54. Defendants' conduct has been intentional and malicious, thereby entitling Mr. Traylor to punitive damages in an amount to be determined at trial, but which amount is within the jurisdictional requirements of this Court.

55. Plaintiff is also entitled to an order enjoining Defendants from further discrimination on the basis of race.

## B. THIRD CLAIM FOR RELIEF

[Unruh Civil Rights Act]

*Unruh Act, Cal Civil Code § 51 et seq.*

56. Plaintiff herein realleges and incorporates by reference all the preceding paragraphs of this Complaint.

57. Defendants injured Plaintiff in violation of the Unruh Act, California Civil Code § 51 *et seq.* by arbitrarily discriminating against him on the basis of his race.

58. Pursuant to the Unruh Act, Plaintiff is entitled to statutory damages of up to three times his actual damages as determined by the trier of fact, but no less than $4,000 for each violation.

59. Defendants' violation of the Unruh Act has been intentional and malicious, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial.

60. Plaintiff is also entitled to an order enjoining Defendants from further discrimination on the basis of race.

## D. FOURTH CLAIM FOR RELIEF

[Unfair Business Practices Act]

*Business & Professions Code § 17200 et seq.*

61. Plaintiff herein realleges and incorporates by reference all the preceding paragraphs of this Complaint.

62. Defendants own, operate, and manage the 7636 Owensmouth Avenue property, a business establishment, and have engaged in the unlawful, unfair, and/or fraudulent business practices, as defined by Business & Professions Code § 17200 *et seq.*, as set forth below:

      a.      Unlawfully discriminating against Plaintiff in violation of FHA;

      b.      Unlawfully discriminating against Plaintiff in violation of FEHA;

      c.      Unlawfully discriminating against Plaintiff in violation of the Unruh Act;

63. Mr. Traylor and the general public have suffered, and continue to suffer, irreparable harm due to Defendants' policy of discriminating against Black people on the basis of race and their conscious disregard of the civil rights of individuals who are Black.

64. By their continuous violations of the above referenced statutes, Defendants have engaged in the *per se* unlawful business practices constituting unfair competition in violation of Business & Professions Code § 17200 *et seq.*

65. Defendants have engaged in acts of unfair competition as proscribed by Business & Professions Code § 17200. By bringing this action, Mr. Traylor, a person who has suffered injury in fact and has lost money and property as a result of Defendants' unfair competition, is acting in the interest of himself and the general public, pursuant to California Business and Professions Code § 17204.

66. On information and belief, unless Defendants are restrained from doing so, Defendants will continue to engage in said unlawful, unfair, and fraudulent business practices. Thus, pursuant to Business & Professions Code § 17203, Mr. Traylor seeks to enjoin Defendants from their continuing commission of the acts alleged above that will irreparably harm him and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

67. Plaintiff is also entitled to restitution for his out-of-pocket expenses caused by Defendants unlawful conduct.

## VI. RELIEF

Wherefore, Plaintiff prays for the following relief from the Court:

68. For an order (a) enjoining Defendants and their agents, employees, and all persons acting under or in concert with Defendants from discriminating on the basis of

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**

race; (b) enjoining Defendants from harassing Plaintiff and their other tenants to vacate; (c) requiring Defendants to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of their race;

69. For declarations that Defendants have violated the provisions of applicable fair housing laws;

70. For actual damages, according to proof;

71. For statutory penalties and special damages, according to proof;

72. For restitution according to proof;

73. For punitive or exemplary damages, according to proof;

74. For reasonable attorneys' fees provided by law;

75. For an award of costs of suit herein incurred including expert witness fees pursuant to California Government Code § 12989.2; and,

76. For such other and further relief as the Court may deem proper.

Dated: Friday, January 6, 23    Respectfully Submitted,

HOUSING RIGHTS CENTER

_____
RODNEY LEGGETT
ZACHARY FREDERICK
JAVIER BELTRAN
*Attorneys for Plaintiff Trajion Traylor*

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL**